UNITED STATES, Appellee

v

HARRY RICHARD GOSSETT, Jr., Hospital Corpsman
Third Class, U. S. Navy, Appellant

14 USCMA 305, 34 CMR 85

No. 17,002

December 13, 1963

*Major Frederick D. Clements*, USMC, argued the cause for Appellant, Accused.

*Major Daniel F. McConnell*, USMC, argued the cause for Appellee, United States.

## Opinion of the Court

Ferguson, Judge:

The accused was brought to trial before a Navy special court-martial upon charges of drunk on duty and malingering, in violation, respectively, of Uniform Code of Military Justice, Articles 112 and 115, 10 USC §§ 912, 915. He was convicted and sentenced to bad-conduct discharge, confinement at hard labor for six months, forfei-

ture of $25.00 per month for a like period, and reduction. The convening and general court-martial authority approved the sentence. The board of review set aside the findings of guilty of malingering and approved only so much of the punishment as provided for confinement at hard labor for four months, forfeiture of pay, and reduction. It, however, affirmed the find-

ings of being drunk on duty, and we granted accused's petition on a number of issues regarding that offense. In view, however, of our action, we need discuss only whether accused's plea of guilty to that charge was providently entered.

The specification in question alleges that Gossett, a hospital corpsman, "while on duty as duty ambulance driver" was found drunk "by reason of an overdose of drugs." At his trial, he entered a plea of guilty and persisted therein after explanation by the president concerning the meaning and effect of his act. Thereafter, it appeared from the evidence that accused inquired of a senior nurse "how much would be needed for an overdose of" a particular tranquilizing drug. The nurse informed him that the dosage varied with individuals and suggested he consult a particular medical textbook. At approximately 7:30 p.m. on the same evening, Gossett informed a fellow corpsman that he was taking the drug, "about 2 pills every 5 minutes." This information was passed to a Doctor Easterling, who ordered that the accused be observed.

During the course of his tour of duty as ambulance driver, accused was observed to be "groggy or sleepy." At approximately 9:00 p.m., his section leader "shook him and told him to go and hit the rack and then he got up and went down there." Subsequently, he was observed to be in a deep sleep and, in light of earlier matters, medical officers were summoned. Accused was examined, a package of pills was discovered on his person, and an emetic was administered. He thereafter regained consciousness and was admitted to the dispensary as a patient.

Accused testified in his own behalf. He declared that, on the night in question, he was "quite jumpy and my nerves were on edge and I took some . . . [drugs] to quiet me down." Before doing this, he checked a medical text for the proper dosage and asked a nurse for the same information. In addition, he was aware of other corpsmen who had taken the same drug "for

headaches and things of that nature, so I took some." As he felt no effect from an initial ingestion of the drug, he took more. He performed his duties normally and later "felt sleepy which is normal because of the time of night." As he was just "sitting there," he was relieved and told to go to bed. Thereafter, he recalled being aroused and taken to the dressing room, where his stomach was pumped.

In his final argument, defense counsel stressed that accused "did take a drug . . . [but] took it only for its designed and intended purpose—that of a tranquilizer." He went on to state "[t]hat at no time were his actions other than normal to those around him . . . [and] he did ascertain the results and use of the drug before ingesting in order to assure only the results he desired."

In light of the foregoing, we conclude that the accused's plea of guilty was improvidently entered ▆▆▆▆▆ ■ and that the president of the court-martial should either have ordered it changed to one of not guilty or afforded the accused and his counsel an opportunity to withdraw testimony and statements which were inconsistent. United States v Epperson, 10 USCMA 582, 28 CMR 148; United States v Schneiderman, 12 USCMA 494, 31 CMR 80; United States v Stanaway, 12 USCMA 552, 31 CMR 138; United States v. Caid, 13 USCMA 348, 32 CMR 348; United States v Thomas, 14 USCMA 223, 34 CMR 3.

First, it should be obvious that the offense charged requires, in the words of the pertinent statute, ▆▆▆▆▆ ■ that the accused be "found drunk on duty." Code, supra, Article 112. And, as we have heretofore pointed out, such at least requires a degree of intoxication sufficient to impair the rational and full exercise of accused's mental and physical faculties. United States v Straub, 12 USCMA 156, 30 CMR 156; United States v Bull, 3 USCMA 635, 14 CMR 53; Manual for Courts-Martial, United States, 1951, paragraph 191. Yet, accused's own testimony and the unvarying position of his counsel was that, during his entire tour of duty, accused

was not affected at all by taking the drug. Thus, Gossett testified that he felt no effect from the tablets and that his sleepiness toward the end of his tour was symptomatically normal. And, according to him, when found in a deep sleep, he had been properly relieved of his duties by his section leader and told to go to bed.

Moreover, assuming accused's story to be true, we perceive some difficulty in predicating criminal liability for intoxication on duty upon what is claimed to be no more than an accidental overdose of a tranquilizer taken for the purpose of calming one's nerves. Had the drug been prescribed for Gossett by a physician, there would be no doubt of lack of foundation for accused's prosecution. Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 615. We do not perceive any substantial difference between this situation and the one in which accused, a hospital corpsman with at least rudimentary medical training and who sought to ascertain the proper dosage, suffers from an overdose of self-administered medicine taken for the purpose of regaining his health. In such instance, although he becomes intoxicated, it is the result of a legitimate, albeit foolish, act which may not be made the basis for concluding the "patient" is drunk on duty within the meaning of Code, supra, Article 112. United States v Caid, supra; United States v Thomas, supra. The court-martial was not bound to accept Gossett's testimony as true, but it could not receive it and permit his plea of guilty to stand. We conclude, therefore, that the plea was improvidently entered and the finding of guilty must be set aside.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Judge KILDAY concurs.

Chief Judge QUINN concurs in the result.