UNITED STATES, Appellee

v

JAMES A. PINKSTON, Private,
U. S. Army, Appellant

18 USCMA 261, 39 CMR 261

No. 21,525

April 18 1969

*Captain Bernard J. Casey* argued the cause for Appellant, Accused.
With him on the brief were *Colonel Daniel T. Ghent, Captain Stephen
Arinson, Captain Carmen P. Belefonte,* and *Captain Anthony F. Cilluffo.*

*Captain Edwin L. Gage* argued the cause for Appellee, United States.
With him on the brief were *Lieutenant Colonel David Rarick* and *Major
Edwin P. Wasinger.*

## Opinion of the Court

FERGUSON, Judge:

The accused pleaded guilty to three specifications of larceny and one of wrongful appropriation of United States Government property, three specifications of absence without leave and one specification of carrying a concealed weapon ( a switchblade knife), in violation of Articles 121, 86, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 886, and 934, respectively. He was sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for one year. Intermediate appellate authorities have affirmed the findings and sentence without modification.

We granted review on two issues raised by appellate defense counsel, the first of which questions the providence of accused's plea to the Charge and specifications alleging larceny and wrongful appropriation.

In an out-of-court hearing held prior to the entry of the plea in open court, the law officer was informed by defense counsel that the accused intended to plead guilty to all of the Charges and specifications. Thereupon the law officer undertook, by questioning of the accused, to explain the meaning and effect of such a plea and to satisfy himself that the plea was provident. After he informed the accused that his plea of guilty would be accepted, the following colloquy took place:

**261**

"DC: One further thing, sir, because I feel sure this will come up, the defense intends to have Pvt. Pinkston make a statement in his own behalf. As you might have gathered from some of the affidavits, the exhibits we intend to introduce in mitigation, there is a possibility of some matters arising which might suggest a possible defense and we have discussed this and we are not asserting it. Perhaps you would care to briefly hear the substance of it.

"LO: What matters in defense might possibly come up?

"DC: The extent of the testimony is that once involved with this thing, sir, Pvt. Pinkston was afraid that if he did not continue, harm would come to his fiancee and his child and so he continued to participate as the charges indicate. The offenses occurred in August and December and then in January and he felt he was unable to withdraw because of his fear of harm to his fiancee and his child.

"LO: Well, I think that would be more a matter in mitigation. It would not be a defense to the commission of the offenses as set forth. It might explain possibly his reasons for committing them.

"DC: Yes, sir. This is the position of the defense, but I wanted to air the matter at this time.

"LO: Right. All right, thank you. Is there any other matter to be taken up?

"DC: No, sir.

"LO: Anything from the prosecution?

"TC: No, sir.

"LO: All right, the hearing is closed and you may reconvene the court."

When the court reconvened, the accused, through his counsel, entered a plea of guilty and the court returned a finding in accordance therewith. After the findings, the accused testified under oath in mitigation of the charged offenses. He detailed his background and told of his love for a Thai woman which resulted in her giving birth to his son. He claimed he was prevented from marrying his fiancee because his company commander refused to give permission, despite numerous requests. With regard to the larceny and wrongful appropriation offenses, the accused testified that he took the property because threats had been made by unidentified Thai nationals against his life and the lives of his son and his fiancee if he did not comply with their demands. He stated that the Battalion had put him on restriction from town "because the CID called down and told them these 'pu chais' was going to kill me, which I was worrying about myself. I was worried about my girl and baby." He contended that he was of the opinion he had no choice but to steal, especially since his friend had been shot as a direct result of these transactions with this group. Asked if his conduct was motivated by fear for the well-being of his fiancee and child, the accused responded:

"Yes, sir, after Coates got shot I knew—I knew because I never did it for my security—they told me if I never took nothing out of camp they would kill her and kill me, too. So, I didn't have no choice."

The defense of duress is available to an accused who was acting under a well-grounded apprehension of immediate death or serious bodily harm. See United States v Fleming, 7 USCMA 543, 23 CMR 7. See also 21 Am Jur 2d, Criminal Law, § 100, Coercion or duress, page 180; Annotation: Coercion, compulsion, or duress as defense to criminal prosecution, § 2, Nature and elements of duress or coercion, page 910, and § 5, Fear based on threats or injury to others, page 917, 40 ALR2d. In United States v Margelony, 14 USCMA 55, 33 CMR 267, we noted that while the law officer correctly instructed on the defense of duress to a Charge of passing worthless checks under Article 123a, Code, supra, 10 USC § 923a, we held that he erred by not extending this instruction to the lesser included offense of failing to maintain sufficient funds, since the defense, if raised by the evidence, applies to all aspects of the transaction. Margelony had testified that other persons

had hit him in the face and stomach and threatened him and his fiancee with even worse treatment in the future if he did not sign the checks in question.

In the case at bar the accused testified that his life and the lives of his son and fiancee had been threatened. He was placed on restriction for his own protection. His friend had been shot as a direct result of his participation in this operation. Under the circumstances we believe that his testimony, although given in mitigation, was sufficient to place the law officer on notice that a potential defense to the charges of larceny and wrongful appropriation existed.

Article 45 (a), Code, supra, 10 USC § 845, provides:

"If an accused arraigned before a court-martial makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty."

See also Manual for Courts-Martial, United States, 1951, paragraph 70*b*, which comports generally with Rule 11, Federal Rules of Criminal Procedure. As we stated in United States v Vance, 17 USCMA 444, 446, 38 CMR 242:

". . . The responsibility for accepting a plea of guilty in a general court-martial is solely that of the law officer (president in a special court-martial), and such a plea should be accepted only after a most searching inquiry. United States v Chancelor, 16 USCMA 297, 36 CMR 453."

In *Vance*, as here, a most thorough inquiry into the providence of accused's plea was made by the law officer. However, Vance, despite his plea of guilty to a charge of desertion, continually asserted that he had been previously discharged. His counsel acknowledged he was aware of this claim but since, by independent inquiry, he was unable to substantiate it, he thought it best for his client to plead guilty. In holding that the law officer erred in accepting Vance's guilty plea, we said, at page 446:

". . . Upon receipt of such information, the law officer should have received from the appellant a disavowal of such claim or refused to accept the plea. He did not do so. Cf. United States v Cleveland, 15 USCMA 121, 35 CMR 93; United States v Thomas, 14 USCMA 223, 34 CMR 3; United States v Gossett, 14 USCMA 305, 34 CMR 85; United States v Harrell, 14 USCMA 517, 34 CMR 297; United States v Caid, 13 USCMA 348, 32 CMR 348; United States v Schneiderman, 12 USCMA 494, 31 CMR 80; United States v Fernengel, 11 USCMA 535, 29 CMR 351."

Here, the accused's counsel informed the law officer that information would be submitted in mitigation which might suggest a possible defense but "we are not asserting it." When asked by the law officer for details, defense counsel stated that the accused was motivated to steal by fear of harm to his fiancee and his child. The law officer opined that this would be a matter in mitigation and "would not be a defense to the commission of the offenses as set forth."

It is obvious the law officer failed to recognize the potential of this information as a possible defense. See above citations. It is hardly surprising then, that he did not make further inquiry or refused to accept the accused's plea when the latter testified under oath to this effect. In failing to so act, we believe that he erred to the substantial prejudice of the accused. United States v Vance, supra.

The second granted issue raises the question of whether the law officer sufficiently tailored his instructions on sentence to include the favorable evidence offered by the defense in extenuation and mitigation.

In United States v Wheeler, 17 USCMA 274, 277, 38 CMR 72, we spoke of "the duty of the law officer to tailor his instructions on the sentence to the law and the evidence, just as in the case of his prefindings advice. United

States v Yocom [17 USCMA 270, 38 CMR 68], United States v Hutton [14 USCMA 366, 34 CMR 146]." We also referred, with approval, to the suggested instructions on findings in Appendices XXXII, XXXIII, Department of the Army Pamphlet No. 27–9, Military Justice Handbook: The Law Officer, April 1958, paragraph 89.

We find the instructions under the evidence presented in this case to be sufficiently in accord with those suggested in the Army Pamphlet as to be unobjectionable.

We hold that the law officer erred in accepting the accused's plea of guilty to the Charge and specifications alleging larceny and wrongful appropriation, in light of the evidence that these offenses were committed under duress. The decision of the board of review with reference thereto is reversed and the record of trial is returned to the Judge Advocate General of the Army. A board of review may reassess the sentence on the remaining offenses to which the accused pleaded guilty or a rehearing on the affected specifications may be ordered.

Judge DARDEN concurs.

QUINN, Chief Judge (dissenting in part):

The accused's testimony demonstrates he had begun stealing Government property long before his child was born. The child was born in October 1967. The accused's trial testimony is to the effect that difficulties with his commanding officer "just turned [him] the other way . . . so . . . [he] took the truck, a three quarter, on the 15th with another GI." This truck is the subject of the first specification, which alleges that the larceny occurred on August 15, 1967, two months before the child was born. There is not a hint anywhere in the record, therefore, that the accused acted out of fear, or because of threats to the well-being of his girl friend or his unborn child, with respect to this specification. The same is true of the larceny of the quarter-ton truck on December 21, 1967, alleged in specification 2. As to that, the accused testified as follows:

". . . Then on the quarter ton jeep, this 'pu chai' that worked at the company area, he came up to me. A lot of times he would go down to the house of my girl and be waiting there when I'd get there at night. I never liked it. A lot of times these GIs would do the same, which I told them to stay away from the bungalow, which is a house, that I don't want them messing around my house or nothing."

According to the accused's testimony, the first threat was made no earlier than "after Coates got shot"; then "they told me if I never took nothing out of camp they would kill . . . [my girl friend] and kill me, too." Only then "didn't [he] have no choice." Other parts of the testimony clearly indicate that Coates was not killed until *after the December larceny*. Manifestly, therefore, nothing in the accused's testimony, or the record before us, impugns in the slightest degree the validity of the plea of guilty to specifications 1 and 2 of Charge I.

I would affirm the decision of the board of review as to Charge I, specifications 1 and 2, as well as the other offenses affirmed by the majority.