577 F.2d 815
 Alfred A. CURCI, Appellant,
v.
The UNITED STATES of America, the Judge Advocate General of
the Army, and the Secretary of the Army, Appellee.
 No. 549, Docket No. 77-6147.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 19, 1978.
Decided May 19, 1978.
 
 Fredric J. Gross, Union, N. J., and Takoma, Md. (Frederic A. Johnson, New York City, on the brief), for appellant.
 Diane R. Eisner, Asst. U. S. Atty., E. D. N. Y., Brooklyn (David G. Trager, U. S. Atty., E. D. N. Y., Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.
 Before MOORE, SMITH and MANSFIELD, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 This is an appeal from an order dismissing plaintiff's complaint seeking to overturn his court martial conviction after some thirty years. The district court found that the summary treatment of Curci's petition under Article 69 of the Uniform Code of Military Justice ("U.C.M.J."), 10 U.S.C. § 869, was appropriate under the circumstances, and as to the alternative claim for relief in the nature of habeas corpus, that the ultimate conclusion reached was correct since Curci had not established prejudicially ineffective representation.
 
 
 2
 Alfred Curci, a native of Brooklyn, New York, was inducted into the Army on October 25, 1945 at the age of twenty. During the next fourteen months (and apparently also at the time of his induction) he was afflicted with a painful disorder, a hydrocele of the right testicle. Curci was instructed that he must submit to surgery to correct the problem. He testified,
 
 
 3
 "Upon hearing this, I got very nervous and I started to worry as soon as I heard this, and I kept going back to sick call asking the captain there if there was any other way I could have this taken care of without an operation and the captain told me that was the only way I could feel better if I had this operation performed, and I was told that if I did not get the operation, that I would be court-martialed." (55a-56a).
 
 
 4
 Fearing either alternative, Curci fled on December 24, 1946, and returned to his family.[1]
 
 
 5
 While at home, Curci did not seek employment, but tended to the daily needs of his mother who suffered from "hypertensive heart trouble". Curci, during this time, considered returning to the Army because his unauthorized absence was an added tension on his mother. On October 14, 1947 Curci surrendered, at his family's urging, to the military authorities at Fort Dix, New Jersey. About ten days after his return, Curci underwent an operation to correct the condition. The operation was deemed a success, but Curci subsequently suffered "continuous pains on my abdomen and testicles and back and left leg". (58a).
 
 
 6
 Charged with desertion the day after his surrender, Curci underwent a psychiatric examination. He was diagnosed as having an "immaturity reaction, mild", but "(t)here is no reason why this (person) cannot function in the Army" and he has "sufficient mental capacity to assist in his own defense". (41a). On February 6, 1948 a general court martial was convened to try Curci for desertion. Curci was represented by a non-lawyer officer. At the opening of the proceeding the prosecution attempted to prove, through the introduction of a morning report extract, Curci's willful absence. The report introduced was "in error" because it was dated "the 28th of December 1947 dropping the excused to absent without leave as of the 24th of December 1946 ". (Emphasis added). (52a). The court granted a recess and approximately 15 minutes later the prosecution presented the court with a stipulation that Curci went absent without leave ("AWOL") on or about December 24, 1946. Before receiving the stipulation into evidence the Law Member asked:
 
 
 7
 "Law Member: Private Curci, do you understand what the trial judge advocate just said?
 
 
 8
 The accused: Yes sir.
 
 
 9
 Law Member: You understand you need not agree to this statement and that if you do not, it will be necessary for him to make his proof by other means?
 
 
 10
 Accused: Yes, sir." (52a).
 
 
 11
 Curci took the stand in his own defense after the Law Member fully informed him of his right to remain silent. Curci testified that he fled out of his fear of the operation and the consequences if he did not submit to the operation, and he said that the condition of his ailing mother played a secondary part in his decision. He denied having any intention to desert, i. e., to remain absent permanently. Following Curci's testimony, each counsel stipulated as to the corroborative testimony, concerning the health of Curci's mother, that three defense witnesses would have given.
 
 
 12
 The panel found Curci guilty of desertion in violation of the 58th Article of War and sentenced him to be confined at hard labor for one and one-half years, to forfeit all pay and allowances, and to be dishonorably discharged. On March 24, 1948 a staff judge advocate reviewed the case and determined that the prosecution had not proved beyond a reasonable doubt that Curci did not intend to return, a prerequisite for conviction of desertion. He recommended that the conviction be reduced to the lesser included offense of absence without leave in violation of the 61st Article of War and that the period of imprisonment be reduced to six months. This was done. In his report, the staff judge advocate noted that Curci had "stipulated himself out of court" with respect to the AWOL charge, and "it would have been better practice for the Law Member to have enlarged upon the effect of the stipulation to the end that the accused would fully appreciate the legal scope of the stipulation". (30a). However, since Curci testified voluntarily, the staff judge advocate concluded that "it may not be said that the stipulation was improvident or prejudicial". (30a).
 
 
 13
 Thereafter, in the years 1953, 1965, and 1971, Curci applied to the United States Army Board for the Correction of Records. As found by the court below, "The Board, in rejecting his initial application, found no basis for a reasonable doubt as to guilt, nor any indication of probable error or injustice in the trial or sentence". (15a-16a). In Curci's subsequent applications, the Board found no new evidence of error and rejected them. In the 1971 rejection, the Board indicated that under the then recently amended provisions of Article 69, U.C.M.J., 10 U.S.C. § 869, Curci had the right to petition the Judge Advocate General for a review of his original conviction.
 
 
 14
 In 1975 Curci made such an application to the Judge Advocate General charging that he was denied the effective assistance of counsel. Curci contended that he was represented by a lay person, maintained that counsel foolishly stipulated to an element of the charge, improperly advised Curci to take the stand, and failed to raise the viable defenses of duress and insanity. The Judge Advocate General found in a one page letter to Curci's counsel, after reviewing the claims, that "the representation by the non-lawyer defense counsel was not prejudicially inadequate", and Curci was denied relief. Curci then brought this action in district court. Chief Judge Mishler dismissed the complaint finding that the summary treatment of Curci's petition was proper and that Curci had not established prejudicially ineffective representation.
 
 
 15
 Article 69 of the U.C.M.J., last amended in 1968,[2] provides in part:
 
 
 16
 "(T)he findings or sentence, or both, in a court-martial case which has been finally reviewed, but has not been reviewed by a Court of Military Review may be vacated or modified, in whole or in part, by the Judge Advocate General on the ground of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, or error prejudicial to the substantial rights of the accused." 10 U.S.C. § 869.
 
 
 17
 Chief Judge Mishler determined, quite correctly, that review under Article 69 is "a collateral proceeding akin to coram nobis ". (18a). As such, it is not part of a direct appeal procedure, but an ancillary review procedure left to the discretion of the Judge Advocate General. See Mayer, Justice and the Military, § 2-766 at 619-20. The legislative reports accompanying the 1968 Amendment to Article 69 explain its purpose:
 
 
 18
 "It has been the experience of all the services in this class of cases . . . that some provision should be made for removing the fact of conviction, as well as granting other relief, in appropriate cases." S.Rep. No. 1601, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.Code Cong. & Admin.News, pp. 4501, 4515.
 
 
 19
 Although legal principles do control such claims, McPhail v. United States, 24 U.S.C.M.A. 304, 52 C.M.R. 15 (1976), the large number of such claims may justify abbreviated procedures and short form responses. Even the Courts of Military Review properly render decisions without lengthy statements of reasons. "Necessarily, the scope and length of an opinion in a particular case rests in the sound discretion of the judicial body." United States v. Hurt, 9 U.S.C.M.A. 735, 756, 27 C.M.R. 3, 24, pet. denied, 27 C.M.R. 512 (1958). See, e. g., United States v. Keenan, 18 U.S.C.M.A. 108, 39 C.M.R. 108 (1969). The Judge Advocate General, in response to the petition, stated:
 
 
 20
 "Your main contention inadequacy of representation was analyzed and reviewed carefully. It was concluded, however, that the representation by the non-lawyer defense counsel was not prejudicially inadequate. More than likely his agreement to stipulate the period of 'AWOL' was based on the theory that an admissible morning report entry was obtained by the prosecution. It is noted, of course, that the accused's trial testimony and the lack of the prosecution's evidence as to required intent caused the approval of only the lesser included offense of 'AWOL'." (69a).
 
 
 21
 In light of the discretionary nature of the Article 69 petition, such a response is not patently insufficient.
 
 
 22
 As to the merits of his claim, Curci argues that the assigned non-lawyer counsel committed three errors which had the effect of denying Curci due process of law. First, he stipulated to unprovable elements of the prosecution's case. Second, he pointlessly waived the self-incrimination privilege. Third, he failed to recognize and argue that duress justified the misconduct alleged.
 
 
 23
 Now, under Article 27 of the U.C.M.J., 10 U.S.C. § 827, defense counsel in general courts-martial must be fully qualified attorneys. However, this requirement was not part of the Articles of War existing at the time of this court-martial; rather it was a part of the original enactment of the U.C.M.J. in 1950.[3] As such, the requirement to be represented by a licensed attorney is purely statutory. Even after the recognition of the "fundamental" right to counsel in civilian litigation, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), absence of a fully-trained attorney has been held not to constitute a per se violation of the Sixth Amendment. Homcy v. Resor, 147 U.S.App.D.C. 277, 455 F.2d 1345 (1971); Harris v. Ciccone, 417 F.2d 479 (8th Cir. 1969), cert. denied, 397 U.S. 1078, 90 S.Ct. 1528, 25 L.Ed.2d 813 (1970); Smith v. McNamara, 395 F.2d 896 (10th Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1211, 22 L.Ed.2d 466 (1969). "The absence of a specific requirement for a licensed attorney relegates the question to determining whether his counsel was competent and provided assistance in his defense to satisfy constitutional standards." Homcy, supra 147 U.S.App.D.C. at 283, 455 F.2d at 1351.
 
 
 24
 The standard of competency is the same for military counsel as for civilian counsel. In this Circuit the standard was established in United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950): "(U)nless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of habeas corpus . . . . A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." This standard has been consistently followed in this Circuit, and was recently reaffirmed in Rickenbacker v. Warden, Auburn Correctional Facility, 550 F.2d 62 (2d Cir. 1976), cert. denied, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977).[4]
 
 
 25
 Examination of a trial record of this vintage, in search of underlying tactics and rationales, is fraught with difficulty. Hypothesis and conjecture, based on a summary of the proceedings, provide only a poor guide to the competency of counsel, but here the record does not indicate that the representation made the proceeding "a farce or mockery of justice". A competent counsel could have many plausible reasons for agreeing to the stipulation as to Curci's absence. The Judge Advocate General hypothesized that an admissible morning report extract may have been available. Chief Judge Mishler suggested that witnesses may have been available to testify as to his absence. Also, counsel may have stipulated to avoid evidence of other unauthorized absences being presented. The morning report extract of October 14, 1947, introduced into evidence, revealed that Curci admitted that he had been AWOL. Since the AWOL charge was only a lesser included offense in the far more serious charge of desertion, Curci's counsel may have agreed to stipulate in exchange for concessions by the prosecution. For example, the prosecution did not give a closing argument; this may have been part of a stipulation agreement. (Appellee's Br. 15-16). While it is impossible to determine the true reason for the stipulation, such feasible explanations weigh against considering the stipulation as a gross error on the part of counsel.
 
 
 26
 Appellant's other two claims have less merit. Curci's decision to take the stand was not necessarily ill-advised. Faced with a charge of desertion, he effectively refuted, as indicated by the review of the staff judge advocate, any intent not to return to the Army. He presented himself as one worried about his physical well-being as well as the ill-health of his mother. Before taking the stand, Curci was fully advised of his right to testify, remain silent, or to make an unsworn statement. He knowingly waived such rights and freely elected to testify.
 
 
 27
 Although counsel for Curci did not explicitly present a duress defense, he did present the Hobson's choice that faced Curci. Curci faced a difficult dilemma, but his was not the type of situation for which duress is strictly applicable. "The defense of duress is available to an accused who was acting under a well-grounded apprehension of death or serious bodily harm." United States v. Pinkston, 18 U.S.C.M.A. 261, 262. See United States v. Fleming, 7 U.S.C.M.A. 543, 558-61 (1957); Manual for Courts-Martial United States P 219f (1969 Rev. Ed.). Curci was not subject to imminent danger of bodily harm, rather he was subject to necessary corrective surgery. Counsel's failure specifically to raise the defense was not a grievous error, in light of his elicitation of all the facts surrounding Curci's absence, which resulted in the ultimate reduction of Curci's sentence.
 
 
 28
 Individually, or taken together, the allegations by appellant are not sufficient to justify reversal of the conviction based on denial of effective assistance of counsel.
 
 
 29
 The order of dismissal is affirmed.
 
 MANSFIELD, Circuit Judge (concurring):
 
 30
 I concur unreservedly in Judge Moore's opinion insofar as it affirms the dismissal of Count One of the complaint, which seeks an order compelling the Judge Advocate General to exercise his power under Title 10 U.S.C. § 869 to reprocess Curci's application for review of his original court-martial conviction and to give it more careful and thorough consideration. Title 28 U.S.C. § 1361 grants jurisdiction to federal courts to compel military officials to perform duties owed to servicemen. Lovallo v. Froehlke, 468 F.2d 340 (2d Cir. 1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973); Williams v. Froehlke, 490 F.2d 998, 1000 & n. 2 (2d Cir. 1974); United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). However, the record here demonstrates that adequate consideration was given to the application and that the Judge Advocate General's decision was supported by substantial evidence.
 
 
 31
 With respect to the majority's affirmance of the district court's dismissal of Count Two, although I do not disagree with its discussion of the merits, I believe that, with the exception noted below, the claims should have been dismissed for lack of subject matter jurisdiction without getting to the merits. Except on grounds not present here, a court-martial conviction generally is not subject to collateral attack, Schlesinger v. Councilman, 420 U.S. 738, 746-53, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), see Weckstein, Federal Court Review of Courts-Martial Proceedings: A Delicate Balance of Individual Rights and Military Responsibilities, 54 Mil.L.Rev. 1 (1971). Moreover, appellant is barred from invoking federal jurisdiction on the basis of the habeas corpus statute, Title 28 U.S.C. § 2241, for the reason that he was not "in custody" within the meaning of this provision when he commenced the present suit. United States ex rel. Myers v. Smith, 444 F.2d 75 (2d Cir. 1971); Wright v. Bailey, 544 F.2d 737, 739 & n. 2 (4th Cir. 1976), cert. denied, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977); Westberry v. Keith, 434 F.2d 623 (5th Cir. 1970); United States ex rel. Kamsler v. Attorney General, 430 F.2d 635 (7th Cir. 1970), cert. denied, 400 U.S. 1014, 91 S.Ct. 575, 27 L.Ed.2d 627 (1971); Harvey v. State of South Dakota, 526 F.2d 840 (8th Cir. 1975), cert. denied, 426 U.S. 911, 96 S.Ct. 2236, 48 L.Ed.2d 837 (1976). Title 28 U.S.C. § 1346, which is limited to claims of less than $10,000, does not provide a jurisdictional basis for granting the equitable relief demanded by Curci, Robertson v. Morris, 409 U.S. 464, 465, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). Title 28 U.S.C. § 1361, which is limited to a grant of power to compel a federal officer or employee to perform a duty owed to a plaintiff, does not empower a federal court collaterally to review a court-martial conviction on the merits, as distinguished from correcting military records, or the like, compare Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965), with Davies v. Clifford, 393 F.2d 496 (1st Cir. 1968). Title 5 U.S.C. §§ 701, et seq., does not constitute a grant of subject matter jurisdiction. Califano v. Sanders, 430 U.S. 99, 104-05, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).
 
 
 32
 There remains Curci's claim in Count Two to the effect that he was erroneously inducted into the armed services, rendering his induction void, since he should have been classified (presumably by his draft board) IV-F (exempt for medical reasons) because of his physical condition. Whether or not a void enlistment would be a sufficient basis for collaterally attacking the court-martial conviction in this case, the cases on which Curci relies, United States v. Russo, 50 C.M.R. 650, 23 U.S.C.M.R. 511 (1975); United States v. Burden, 50 C.M.R. 649, 23 U.S.C.M.A. 510 (1975), require that the officials responsible for the induction know of the defect that should have resulted in the inductee's rejection. Accordingly, Curci's allegation is too conclusory to satisfy the requirements of Rule 8(a)(2), F.R.Civ.P., and must be dismissed for failure to state a claim entitling Curci to relief.
 
 
 33
 Thus, I reach the same result as my brothers, albeit by a slightly different route.
 
 
 
 [1]
 Curci's service record indicated that he had additional unauthorized absences, totalling 159 days, for which he had not been tried. He was absent without leave from June 4, 1946 until July 12, 1946 when he was apprehended. He was also absent without leave from July 15, 1946 until November 30, 1946, when he was apprehended again
 
 
 [2]
 P.L. 90-632, 82 Stat. 1335 (Oct. 24, 1968)
 
 
 [3]
 64 Stat. 108 (May 5, 1950), 50 U.S.C. § 551 et seq. The 1950 Act was repealed and replaced by the Act of 1956, 70A Stat. 36 (August 10, 1956), 10 U.S.C. § 801 et seq
 Under the 17th Article of War applicable at the time of this court-martial, "(t)he accused shall have the right to be represented in his defense before the court by counsel of his own selection . . . (or by appointed counsel)." Office of Judge Advocate General of the Army, Military Laws of the United States, § 374 (8th Ed. 1939) (then 10 U.S.C. § 1488).
 
 
 [4]
 Other circuits have adopted other standards. E. g., United States v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1202 (1973) (test is whether the defendant had "reasonably competent assistance of an attorney acting as his diligent conscientious advocate"); Moore v. United States, 432 F.2d 730, 736 (3rd Cir. 1970) (en banc) ("the standard of adequacy of legal services as in other professions is the exercise of customary skill and knowledge which normally prevails at the time and place"). See Rickenbacker, supra at 65-66. Even under these other standards the performance of Curci's counsel would not be deemed constitutionally incompetent