UNITED STATES

v.

**Mallory A. PARKER, 246 94 5820, Seaman Recruit (E-1), U.S. Navy.**

NCM 80 2582.

U. S. Navy Court of Military Review.

Sentence Adjudged 2 April 1980.

Decided 20 March 1981.

CDR Walter J. Landen, Sr., JAGC, USN, Appellate Defense Counsel.

ENS C. Baxmeier, JAGC, USNR, Appellate Defense Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before BAUM, PRICE and EDWARDS, JJ.

EDWARDS, Judge:

Appellant was tried by special court-martial, military judge sitting alone and upon his pleas of guilty was found guilty of two specifications of unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. He was sentenced to confinement at hard labor for three months, forfeiture of $200 pay per month for three months and to be discharged from the U.S. Navy with a bad-conduct discharge. The findings and sentence were approved partially and the sentence to confinement was suspended. The supervisory authority approved the sentence as approved and partially suspended by the convening authority.

The case came to this Court originally without specific assignment of error but in reviewing the record of trial this Court perceived that the providency inquiry might be deficient in that evidence was presented that might raise the defense of duress; we thereupon returned the record to counsel requesting briefs on three questions. After review of these briefs we are convinced that the military judge did not conduct an inquiry adequate to determine whether the guilty plea should be accepted or rejected.

Appellant, after safely negotiating the military judge's inquiry into the two periods of unauthorized absence, made an unsworn statement during the extenuation and mitigation phase of trial stating:

While aboard my ship in California, I was harassed by my homosexuality. I went to the Chaplain on the ship and told him of my homosexuality, and told him that I could not adjust to military life. He talked to me and told me that I could get a discharge from the Navy which is what I wanted. He told me that it would be an administrative discharge. Well, the Chaplain got my paper work started on my discharge by contacting the XO of the ship and the Captain, which was okayed by them. While waiting for my discharge, I began to get a lot of mental pressures, and I started using drugs to escape some of this pressure. I went to the Chaplain and he told me to see the head doctor on the ship, so I did. I told him that I would like to go TAD to a legal hold barracks on base to await my discharge. He told me that he could not let me off the ship unless there was something wrong with me, like I was crazy, or hurt physically. The pressure I was under became even stronger. I myself not knowing which way was up. I hadn't solved my problem and the only way to do that in my mind and my heart was by leaving... When I did go I was not in control of my own mind, so to speak. My decisions were made by emotions and pressure.

(R. 15 -16).

Also in extenuation and mitigation appellant introduced Defense Exhibits A and D, statements from a friend from the legal hold barracks and the ship's doctor respectively. The friend stated, in part, that appellant "also told me before going UA he was being processed for an administrative discharge in San Diego. The Navy wanted him to go to sea to await for his discharge, he didn't want to go out because his life was threatened by some sailors so he went UA." (Defense Exhibit A). The ship's doctor related that appellant "is afraid of being on ship because of homosexuality... Desires out of Navy because of fear of retribution for sexual preference. I believe he is sincere." (Defense Exhibit D).

Article 45, UCMJ, 10 U.S.C. § 845 provides that if an accused sets up matters inconsistent with a guilty plea, the plea

must be rejected. Reading the unsworn statement of appellant and the pertinent parts of Defense Exhibits A and D together we can not say that the defense of duress has been established. There is simply not enough in the record to enable us to make that determination. We do not perceive the issue to be whether the defense of duress does or does not lie. The issue is whether the evidence presented was sufficient to place the military judge on notice that a potential defense to the charge was available to appellant. *United States v. Pinkston*, 18 U.S.C.M.A. 261, 263, 39 C.M.R. 261, 263 (1969). In *United States v. Timmins*, 21 U.S.C.M.A. 475, 479, 45 C.M.R. 249, 253 (1972), the court found that when an accused's testimony reasonably raised an affirmative defense, it was incumbent upon the military judge to make a more searching inquiry to determine the accused's position on the apparent inconsistency with his plea of guilty. In *United States v. Logan*, 22 C.M.A. 349, 351, 47 C.M.R. 1, 3 (1973), the Court of Military Appeals speaking further on what would reasonably raise a defense of duress in a providency plea held that the intent of Article 45 "is fully met by requiring some substantial indication of direct conflict between the accused's plea and his following statements."

The defense of duress requires the accused to be acting under a well-grounded apprehension of immediate death or serious bodily harm. We can not say whether the accused was acting under a well-grounded apprehension of immediate death or serious bodily harm. Just as in *United States v. Timmins, supra*, appellant's testimony and the supporting evidence, given its best view, by no measure establishes his innocence as a matter of law, but if believed in its totality considering a threat to appellant's life, the evidence was inconsistent with his prior declaration of guilt to such an extent that the military judge was required to inquire further. Further inquiry will provide the military judge the factual predicate upon which he can determine whether appellant was acting upon a well-grounded (factual) apprehension or just upon an apprehension to which a man of ordinary fortitude and courage would not yield.

The time for such inquiry is at the original trial thereby gaining greater judicial economy. When "running the gauntlet" of the guilty plea, military judges should be ever alert for small signals raising inconsistent matters and obtain clarification from the accused for it is the sole responsibility of the military judge to assure that the record supports the plea of guilty. *United States v. Hoaglin*, 10 M.J. 769, at 771 (N.C.M.R.1981) (*en banc*) (Edwards, J., concurring).

The findings of guilty are reversed and the case is remanded for a new trial if deemed appropriate and practicable.

Senior Judge BAUM and Judge PRICE concur.