**UNITED STATES**

**v.**

**Richard PETERSON, 198 46 4520, Private First Class (E–2), U. S. Marine Corps.**

**NCM 76 0107.**

U. S. Navy Court of Military Review.

Sentence Adjudged 17 Sept. 1975.

Decided 16 July 1976.

LCDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel; LT Patrick A. Fayle, JAGC, USN, Appellate Government Counsel.

Before EVANS, Senior Judge, and MALLERY and GREGORY, JJ.

EVANS, Senior Judge:

Appellant, pursuant to his pleas, stands convicted of wrongful possession of marihuana and larceny of various items of merchandise from the Marine Corps Exchange at Camp Lejeune in violation of Articles 92 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 921.

The first trial held on 8 and 16 April 1975 resulted in a mistrial because appellant did not understand or fully appreciate the differences between trial by judge alone or before members. The problem centered around appellant's basic intelligence as opposed to mental responsibility (Mistrial, Defense Exhibits D and F). Appellant had proffered not guilty pleas at the first trial.

The second trial was held on 17 September 1975. At this proceeding, appellant pleaded guilty in response to a pretrial agreement. The adjudged bad conduct discharge was suspended.

The tenacious appellate defense counsel has assigned four errors on behalf of his

client. With the exception of Assignment II, the other errors did not materially prejudice appellant or are without merit.

It is urged appellant's plea to the larceny offense was improvident. We are compelled to agree. After listing the larceny offense elements, the trial judge and appellant engaged in the below colloquy:

"MJ: The court will come to order, all parties to the trial are present. Alright [sic], PFC, with respect to Charge Two, like we did before in Charge One, tell me in your own words what happened.

ACCUSED: Sir, I went into the PX, started walking around, looking, and I just started picking up things. Once I got it, I left the store. When I had got caught the Staff Sergeant asked me what I took. I told him, two jackets. First one jacket then I went out, then I came back and took the other jacket. It was on a weekday or weekend, I don't know. I went back into the PX and picked up two V-neck sweaters and a pair of trousers, and then I got the rest of the stuff.

MJ: Did you pay for the items?

ACCUSED: No, sir.

MJ: Did you intentionally not pay for the items? Did you mean not to pay for the items? You didn't just forget to pay for them, did you?

ACCUSED: No, sir.

MJ: You mean that, not to pay for the items, that was your intention, not to pay for the items listed in the specification?

ACCUSED: (No response)

MJ: I need to know what your state of mind was at the time. What was in your own mind. Was it in your mind to pay for those, or was it not?

ACCUSED: *Well, sir, it was like something told me to pick it up and leave the store. That's what I felt.*

MJ: *And that's what you did?*

ACCUSED: *Yes, sir.*

MJ: You realized when you left the store that when you 'get stuff' over at the PX you're supposed to pay someone for it?

ACCUSED: Yes, sir.

MJ: *You knew, PFC, that it was wrong not to pay for those items, didn't you? You're not telling me that some inner voice compelled you to take that stuff out of the store without paying for it, are you?*

ACCUSED: *I was like the devil was in me and it told me to pick up this and* .

. .

MJ: *When you say the devil was in you do you mean that it was some part of your character that caused you to take this gear out of the store? You don't think it was kind of a strange supernatural force, do you?*

ACCUSED: (No response)

MJ: *Are you telling me that it was something within yourself that caused you to take that stuff?*

ACCUSED: *Yes, sir.*

MJ: So that when you took the gear out of the store without paying for it you realized at the time that it was wrong?

ACCUSED: Yes, sir.

MJ: And you agree now that it was wrong?

ACCUSED: Yes, sir.

MJ: Now, did you take from the PX, two Oleg Casson suede jackets, of a value of about $146.70; one pair of men's trousers, of a value of about $15.00; two Campus sweaters, of a value of about $16.70; one Puritan sweater, of a value of about $15.20; and one Lord Jeff sweater, of a value of about $6.90?

ACCUSED: Yes, sir.

MJ: You're satisfied that those items are worth what the specification says?

ACCUSED: Yes, sir.

MJ: And were worth that at the time that you took them?

ACCUSED: Yes, sir.

MJ: Are you satisfied, PFC, that that property that I have just listed, belonged to the Marine Corps Exchange located here at Camp Lejeune?

ACCUSED: Yes, sir.

MJ: Are you satisfied that you took this gear between the 17th and 24th of December 1974, somewhere between those two dates?

ACCUSED: Yes, sir.

MJ: And this occurred here at Camp Lejeune?

ACCUSED: Yes, sir.

MJ: Are you satisfied that the property was of a value of about $200.00?

ACCUSED: Yes, sir.

MJ: Lieutenant WILKES, you plead guilty by exceptions and substitutions. I assume that you added up the substituted figure?

DC: Yes, Your Honor.

MJ: Alright [sic], I'm not going to add them up myself. Nobody, PFC, gave you permission to take those items out of the store without paying for them did they?

ACCUSED: No, sir.

MJ: At the time you took those items, did you intend to keep them?

ACCUSED: (No response)

MJ: You didn't intend to bring them back to the store at a later time did you?

ACCUSED: No, sir.

MJ: You did intend to keep them?

ACCUSED: Yes, sir." (R. 9–11) [Emphasis supplied.]

█ Counsel urges the affirmative defense of lack of mental responsibility at the time the offense was committed is raised by the *Care* inquiry, *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). Government counsel valiantly argues that appellant's statement with respect to the "devil" shows at most a character defect. I note in passing Government counsel relies on the Mistrial Defense Exhibit F. That exhibit is not a part of the second trial record, and thus was not considered by the judge. This exhibit indicates appellant is mentally sound and labors under a guilt syndrome as a result of stealing the Exchange's property. The examining doctor characterized the mental malady as "Situational Reaction, acute, moderate .DNEPTE." Stated another way, the issue of mental responsibility *was not raised at the first trial*. The issue is whether the *affirmative defense* of mental responsibility was raised at the second trial during the plea inquiry. If it was, the trial judge had

the duty "to make a more searching inquiry to determine the accused's position on the apparent inconsistency with his plea of guilty," *United States v. Timmons*, 21 U.S. C.M.A. 475, 479, 45 C.M.R. 249, 253 (1972). We are aware a contrite plea may not be set aside if the statements raise the mere possibility of a conflict between a guilty plea and the statements, *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973).

In deciding whether the issue was raised, we compare the factual situations in *United States v. Hinton*, 8 U.S.C.M.A. 39, 23 C.M.R. 263 (1957) and *United States v. Thomas*, 20 U.S.C.M.A. 249, 43 C.M.R. 89 (1971). In *Hinton*, a guilty plea case, the accused in a pretrial statement stated, "I am in a mental condition where whenever I see something, I feel I have to take it . . .," pages 41, 265. Other examples of incidental unsound mental conditions appear in the *Hinton* decision which do not require the pleas to be improvident, Id.

In *United States v. Thomas, supra*, the accused defended on the issue of lack of mental responsibility. Thomas maintained he committed the charged murder offense in response to an inner voice. The expert medical testimony considered Thomas had a character disorder. One expert witness considered the voice may have been strong enough that Thomas could not adhere to the right. The Court of Military Appeals considered that Thomas' testimony together with the expert medical testimony entitled him to jury instruction on the mental defense. The Court noted in its opinion the issue of mental responsibility is raised by "some evidence," *see* Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 122c. This is to be contrasted with the "substantial evidence" standard provided in the 1951 Manual. In the case at bar, appellant, like Thomas, maintained an inner voice compelled him to take the merchandise.

If we follow *Thomas*, the issue of mental responsibility was a matter to be resolved during the plea inquiry. The Government would argue the inner voice of the devil

was but incidental evidence of a mental condition. The pragmatic author judge will not attempt to split "legal hairs" by defining the terms "some evidence" and "incidental evidence." Instead, the critical point is, as stated by Chief Judge Quinn in *Hinton*, whether:

> ". . . the accused and his counsel [and the judge] were aware of the legal effect of the evidence claimed to be inconsistent with the plea of guilty," pages 41, 265.

■ Stated in another vein, does the record show an appreciation of the applicable law by trial lawyer personnel, *see United States v. Brown*, 1 M.J. 937 (N.C.M.R.1976) slip opinion page 3. The record does not indicate whether lawyer personnel realized that the devil's voice raised the spectre of a lack of mental responsibility. No one will contend this appellant was aware of the defense. Also, trial defense counsel's argument does little to solve the problem, *compare* with *Hinton*, pages 42, 266.

It is considered the judge was required to ascertain whether the possible defense of mental responsibility had been considered by trial defense counsel and his client, *United States v. Timmons, supra.* The plea to the larceny offense was improvident.

Accordingly, the guilty findings covering Charge II and its specification are set aside. Charge II and its specification are dismissed. The findings of Charge I and its specification are affirmed. Only so much of the sentence as approved below as provides for four months confinement, forfeiture of $225.00 per month for four months and reduction to pay grade E–1 is affirmed.

Judge MALLERY and Judge GREGORY concur.