**UNITED STATES, Appellee,**

v.

**Staff Sergeant John E. MITCHELL, 297–60–0777, United States Army, Appellant.**

**ACMR 9101155.**

U.S. Army Court of Military Review.

24 March 1992.

---

For Appellant: Captain James M. Heaton, JAGC, Captain Mark L. Toole, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Steven M. Walters, JAGC (on brief).

Before De GIULIO, Senior Judge, and ARKOW and HAESSIG, JJ.

## OPINION OF THE COURT

ARKOW, Judge:

Appellant, pursuant to his plea, was found guilty by a military judge sitting as a general court-martial of desertion with the intent to avoid hazardous duty or important service in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885 (1982) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for thirty months, and reduction to Private E1. The convening authority, pursuant to a pretrial agreement, approved the adjudged sentence but suspended all confinement in excess of six months for a period of six months.

Appellant now claims that the military judge erred in accepting his guilty plea because the providence inquiry raised inconsistent matters and the possible defense of duress, which the military judge failed to adequately resolve. We disagree.

Sometime after being notified that he was to deploy with his unit to Operation Desert Shield, appellant requested leave to

resolve some family problems. He was given leave from 20 to 23 December 1990 and was advised to call his platoon sergeant if he needed additional leave. Appellant failed to return to his unit on 23 December 1990, did not request additional leave, and remained absent, without proper authority, until he surrendered to military control on 18 February 1991. Appellant's unit deployed to Saudi Arabia on 23 December 1990 without him.

During the providence inquiry appellant admitted all of the elements of the offense. During this inquiry and later during the sentencing portion of the trial, however, evidence disclosed that appellant's wife and son were having severe mental problems which required extended treatment, to include some hospitalization. Appellant now contends that the military judge was presented with a scenario in which a soldier, who was about to deploy to Saudi Arabia, was faced with leaving a family in a dangerous state of disarray. He further contends that, as his wife had serious suicidal ideations, he was the only person that could keep serious harm from coming to his family. Thus, he argues, these facts were inconsistent with the guilty plea in that they raised the possible defense of duress which required the military judge to reject the guilty plea. *See* UCMJ, art. 45, 10 U.S.C. § 845; *United States v. Brooks*, 26 M.J. 930 (A.C.M.R.1988).

■ Duress may be a defense to a desertion charge. *See United States v. Hullum*, 15 M.J. 261 (C.M.A.1983). To establish the affirmative defense of duress it must be shown that an accused's

> participation in the offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act. The apprehension must reasonably continue throughout the commission of the act. If the accused has any reasonable opportunity to avoid committing the act without subjecting the accused or another innocent person to the harm threatened, this defense shall not apply.

Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 916(h) [hereinafter R.C.M.].

■ The plain language of R.C.M. 916(h) leads to the conclusion that the defense of duress is intended to apply only to cases where the coercion is asserted by third persons. R.C.M. 916(h) requires that an "innocent person would immediately *be killed* or suffer serious bodily injury" (emphasis added) to support the defense. It also refers to "harm threatened" to an accused or another innocent person. This supports the conclusion that the defense contemplates harm by another, not self-inflicted injury. Although we have been unable to find any military cases in point, we conclude that the defense of duress is not in issue unless the duress is imposed by a person other than the accused or an innocent person.

We believe the facts brought to the attention of the military judge negate the possibility that appellant could have raised the defense of duress and that the facts were not inconsistent with the guilty plea.

The duress defense typically has been applied to situations where a third party causes an accused or another innocent person such as a relative to face immediate death or great bodily harm and, as a result, forces the accused to commit an offense. The third party's actions amount to separate criminal conduct. Examples of the successful use of the duress defense involving unauthorized absences where third parties victimized service members with life threatening racial attacks and sexual harassment are found in *United States v. Hullum*, 15 M.J. 261 (C.M.A.1983), and *United States v. Roberts*, 14 M.J. 671 (N.C.M.R.1982), *rev'd in part*, 15 M.J. 106 (C.M.A.1983). The defense was also raised, in providence inquiries, where an accused forged, made, and uttered worthless checks because his family was threatened with physical harm by third parties to whom he owed money as a result of gambling debts, and where an accused broke into a commissary at the behest of third parties, who stopped him while he was driving home from a movie, and threatened him and his

family with serious injury unless he complied with their demands. *United States v. Palus*, 13 M.J. 179 (C.M.A.1982); *United States v. Jemmings*, 1 M.J. 414 (C.M.A. 1976). The common thread in these "duress" cases is that third parties, by threatened or actual criminal conduct, caused an accused to commit a crime.[1]

We are unaware of any reported military cases where the defense of duress was successfully raised which did not involve third persons. However, there have been a number of federal and state cases that did not permit the use of the duress defense where third persons were not involved in the coercion.[2]

In *United States v. Stevison*, 471 F.2d 143 (7th Cir.1972), *cert. denied*, 411 U.S. 950, 93 S.Ct. 1933, 36 L.Ed.2d 411 (1973), appellant, a bank teller, contended that her belief that her daughter would commit suicide if she did not cover her daughter's check overdrafts raised the defense of duress. The trial judge refused to give appellant's tendered instructions on the defense. Appellant conceded there were no reported American cases supporting the proffered instruction. The Court of Appeals held "it is clear that the court did not err in refusing to give appellant's proposed instruction." *Id.* at 147. *See also Love v. State*, 271 Ind. 473, 393 N.E.2d 178 (1979) (robbery for money to buy heroin to prevent drug withdrawal did not raise defense of duress); *State v. Gann*, 244 N.W.2d 746 (N.D.1976) (duress could not be asserted where the defendant robbed to provide his family with food and shelter because the compulsion did not come from an *outside source* and remove the free will of the actor); *Degler v. State*, 741 P.2d 659 (Alaska Ct.App.1987) (duress instruction not given and evidence not allowed where reason for robbery was to secure funds to attend a custody hearing, because defense of duress requires the use of *unlawful force*).[3]

In the case at bar, there was no third party coercing appellant by unlawful acts to desert. Appellant's claims of his concern for his wife's mental stability, including her suicidal ideations, do not permit him to assert the defense of duress. Here, there was no unlawful force or criminal conduct exerted against appellant or his wife. Regardless of whether any of the other requirements of the defense are met, the military judge did not have to reject the guilty plea or resolve any perceived inconsistencies.

Even if we were to conclude that the defense of duress could be asserted under these facts, we find that the record is sufficiently complete for the military judge to have concluded under the facts presented that there was no reasonable possibility that the tests for the defense had been met.

There are four tests for the defense of duress to succeed:

(1) That there be a threat that an accused or an innocent person be immediately killed or seriously injured; and

(2) That there be a reasonable apprehension that the threat will be carried out; and

(3) That the apprehension continue throughout the commission of the offense; and

(4) That there is no reasonable opportunity to avoid committing the act.

*See* R.C.M. 916(h).

1. In *United States v. Dorey*, 14 C.M.R. 350 (A.B.R.1954), an Army Board of Review discusses the defense of duress. As part of the discussion on the duress defense it cites Dangel, *Criminal Law* 139–40 (1951), which notes, "'It is a defense when the alleged criminal act was done by force or compulsion of another and *the actor's mind and will did not concur in the act or instigate him to commit it.... [Duress] must be produced by conduct unlawful in character....'*" 14 C.M.R. at 356 (emphasis added).

2. Corpus Juris Secundum provides that the defense of duress excuses criminal conduct where the actor is under an *unlawful* threat of imminent death or serious bodily injury that causes the actor to commit a crime. It envisions a third person compelling a person by threat to commit a crime. 22 C.J.S. *Criminal Law* § 52 (1989).

3. These decisions rely on state statutes establishing the parameters of the duress defense. Although the statutes differ from R.C.M. 916(h) in some respects, they nonetheless illustrate the theory behind the defense. For that reason they are helpful in deciding this case.

■ There was no reasonable apprehension that appellant's wife would be immediately killed or would suffer serious bodily injury. Appellant's wife was hospitalized on 18 December 1990 for depression which was the result of her concern about the mental problems of appellant's nine-year-old son and her anxiety about appellant's imminent deployment to Saudi Arabia. Doctors prescribed a two-week course of treatment for Mrs. Mitchell which if successful would have alleviated her problems. This placed appellant in a dilemma. He was scheduled to deploy in a week and he had to find a place for his children, lest his ex-wife get custody while the current Mrs. Mitchell was in the hospital. The record indicates he apparently planned to take his children to a relative and was given leave from 20 to 23 December 1990 to accomplish this. Instead, he checked his wife out of the hospital on 19 December 1990 and went on leave the following day. He never contacted the relatives with whom he claimed he intended to leave his children. He did not request an extension after his leave expired. He remained absent until 18 February 1991—about a month after Operation Desert Storm commenced.

Appellant admitted that he put his family ahead of the military, but never stated or implied that he deserted because he felt his wife would suffer immediate death or great bodily harm.

It is reasonable to conclude from the record that the hospitalization should have allayed any apprehension that appellant may have had about his wife's condition. It was unreasonable for him to believe that there was an immediate threat of suicide while she was in the hospital and it is not logical to conclude that if appellant believed she was a suicide risk he would take her out of the hospital. It was also unreasonable for him to conclude that he could not take action to ensure that she had proper care at any time while he was absent. In addition, he was given the opportunity to pursue other avenues of assistance to alleviate the problem with his wife.[4]

■ The tests for the defense of duress are ones of reasonableness—not whether appellant felt he was under duress. It is a defense that can only be used as a last resort. Here, the military judge had all of the facts necessary to conclude that it was unreasonable for appellant to believe that there was an immediate suicide threat and that he had no other lawful course of action to resolve the problem.[5] He need not ask appellant whether he was under duress.

■ We need not find error in a military judge's acceptance of a guilty plea because there was a "mere possibility of conflict." *United States v. Logan*, 47 C.M.R. 1, 3 (C.M.A.1973). Rejection of a plea is only required when there is a substantial basis in law and fact for questioning a plea of guilty. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). Here, the record is replete with evidence that negates any possibility of a duress defense.

The findings of guilty and the sentence are affirmed.

Senior Judge De GIULIO and Judge HAESSIG concur.

---

**4.** It was suggested that appellant apply for a hardship discharge but he declined to do so and indicated that he wanted to wait until his term of service expired before he left the Army.

**5.** The military judge considered appellant's sworn statement during the guilty plea inquiry and his unsworn statement during the sentencing portion of the trial. He also considered his wife's testimony, a stipulation of fact, and stipulations of expected testimony from medical personnel who treated and counseled Mrs. Mitchell and his nine-year-old son. These were properly considered in extenuation and mitigation. *See United States v. Johnson*, 956 F.2d 894 (9th Cir. 1992).