**UNITED STATES**

v.

**Lester E. OLINGER IV, 299–84–4773 Quartermaster Second Class (E–5), U.S. Navy.**

**NMCM 96 01319.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 1 Feb. 1996.

Decided 24 July 1997.

CAPT Allan F. Elmore, JAGC, USNR, Appellate Defense Counsel.

LT Leslie K. Burnett, JAGC, USNR, Appellate Defense Counsel.

Capt Christopher N. Hamilton, USMC, Appellate Government Counsel.

Before DOMBROSKI, LUCAS and NICHOLS, JJ., Appellate Military Judges.

NICHOLS, Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of unauthorized absence and missing movement through design, in violation of Articles 86 [1] and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 887 (1994)[hereinafter UCMJ]. Appellant was sentenced to confinement for 80 days, forfeiture of $500.00 pay per month for two months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed. Pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of 75 days for 6 months from the date of trial.

Appellate defense counsel filed two summary assignments of error [2] on behalf of the appellant. Thereafter, on 15 January 1997, counsel submitted a motion for leave to file a supplemental pleading and an additional summary assignment of error.[3] This court

1. Appellant pled not guilty to a violation of Article 85, UCMJ (desertion) but guilty to the lesser-included offense of Article 86, UCMJ (unauthorized absence) for the period alleged in the desertion charge.

2. I. APPELLANT'S PLEAS OF GUILTY TO AN UNAUTHORIZED ABSENCE WHERE THE MILITARY JUDGE FAILED TO RESOLVE THE POSSIBLE EXISTENCE OF A DURESS DEFENSE AFTER APPELLANT STATED IN HIS UNSWORN STATEMENT DURING SENTENCING CASE THAT HE WENT ON AN UNAUTHORIZED ABSENCE BECAUSE HE FELT HIS WIFE'S STATE OF MENTAL DEPRESSION MIGHT KILL HER. (Citations omitted.) The Government treated this assignment of error as

alleging that appellant's guilty pleas were improvident and we will do the same.

II. APPELLANT'S SENTENCE TO AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE IN THAT APPELLANT WENT ON AN UNAUTHORIZED ABSENCE TO CARE FOR HIS ILL SPOUSE AND APPELLANT'S PRIOR SERVICE WAS COMMENDABLE. (Citations omitted.)

3. THE OFFENSE OF UNAUTHORIZED ABSENCE IS A LESSOR INCLUDED OFFENSE OF MISSING MOVEMENT IN THE MANUAL FOR COURTS–MARTIAL, AND THEREFORE, THE MILITARY JUDGE ERRED WHEN HE FAILED TO FIND THEM MULTIPLICIOUS

granted the motion. Assignment of Error I, having to do with the possible existence of an affirmative defense to the charges of unauthorized absence and missing movement through design, was subsequently argued orally on 16 January 1997.[4] All together, there are three assignments of error to be addressed by this court.

### The Necessity Defense

On 27 June 1995, appellant failed to return from authorized leave and report to his ship, the USS FAHRION, located at Mayport, Florida. He remained absent from the USS FAHRION until on or about 5 December 1995, at which time he turned himself in to the authorities at Great Lakes. At the time he made the decision to miss his ship's movement, appellant was aware that the USS FAHRION was scheduled to move on the UNITAS deployment. At trial, appellant acknowledged his guilt and provided a factual basis for all the elements of both charged offenses. During the sentencing phase of his trial, appellant exercised his right to present matters in extenuation and mitigation by making an unsworn oral statement. In his unsworn statement, he stated the following:

> In November of 1994 I re-entered active service at Great Lakes, Naval Station where I spent one month at TPU awaiting orders. After receiving orders to USS FAHRION, I reported in early December. The ship was stationed in Charleston, South Carolina, where we made our home. In March 1995 FAHRION went to Norfolk for a final evaluation period in Degowzen [sic] for one month. During that time my wife and I found out that she could not have children, and after that my wife went back on Prozac, an antidepressant drug. I came home for one week to move to Ponte Vedra, Florida, because our ship's home port shipped into Mayport, Florida.

> After the move I went back to Norfolk to ride the ship back to Charleston. After two weeks in Charleston the FAHRION went to sea for one month until the 24th of May when I returned to Charleston for two more weeks.

> In the middle of June I finally saw my wife's condition of depression. She had surgery several years prior that makes stress a danger to her health. And at the time I went UA I felt that her depression might kill her from the stress if I went on the UNITAS deployment.

Record at 33.

In his brief appellant argued that his guilty pleas were improvident because the military judge failed to adequately resolve the potential defense of duress raised during his unsworn statement. He contends that his use of the phrase "I felt that her depression might kill her" suggested a possible defense to the offenses charged. If the defense of duress was reasonably raised, the military judge was required to reopen the providence inquiry to resolve the availability of the affirmative defense before accepting the appellant's pleas. Therefore, appellant contends, the judge's failure to secure a factual basis negating the availability of the duress defense renders his guilty pleas to the charges improvident.

At trial, a military judge may not accept a guilty plea unless the accused provides an adequate factual basis for the plea. RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. For the military judge to accept an accused's plea of guilty, the facts elicited from the accused must objectively support his plea. *United States v. Schwabauer*, 37 M.J. 338, 341 (C.M.A.1993). Furthermore, the judge has a *sua sponte* duty "to ensure that an accused not plead

FOR FINDINGS AND DISMISS THE LESSOR INCLUDED OFFENSE OF UNAUTHORIZED ABSENCE (Citations omitted.)

**4.** In his appellate brief, appellant contended that his unsworn statement raised the possible availability of the affirmative defense of duress. In its reply brief, the Government proceeded as if the appellant was in fact arguing that the affirmative defense of necessity had been raised. On 10 January 1997, appellant filed a Motion to Cite

Supplemental Authority at the oral hearing on 16 January 1997. (The motion was filed pursuant to Rule 23, Court of Criminal Appeals, Rules of Practice and Procedure). The supplemental authority cited was an appellate military case and military law review article discussing the defense of necessity. At the oral hearing, appellant argued the necessity defense rather than the duress defense.

guilty to an offense of which he is in fact not guilty." *United States v. Hanson,* 24 M.J. 377, 379 (C.M.A.1987).

■ After a plea of guilty is entered, the plea may be rendered improvident if an accused's subsequent statement raises an issue that is in substantial conflict with the plea. *United States v. Stewart,* 29 M.J. 92, 93 (C.M.A.1989). When this occurs, the military judge must then resolve the factual inconsistencies and any apparent defenses raised by the subsequent statement. *United States v. Jemmings,* 1 M.J. 414, 418 (C.M.A.1976). Therefore, when a potential defense is raised, the military judge should explain the elements of the defense to the accused and should not accept the accused's plea of guilty unless the accused admits facts which negate the defense. R.C.M. 910(e); *See United States v. Peterson,* 1 M.J. 972, 974 (N.C.M.R. 1976). The judge is required to enter a plea of not guilty on behalf of the accused if, after a plea of guilty, he "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently." Art. 45(a), UCMJ, 10 U.S.C. § 845(a). *See* R.C.M. 910(b), (h)(2). On appeal, if the providence inquiry does not support the guilty plea or if the record of trial "show[s] a substantial basis in law or fact for questioning the guilty plea," this court must set aside the applicable findings. *United States v. Vega,* 39 M.J. 79, 81 (C.M.A.1994)(citing *United States v. Prater,* 32 M.J. 433 (C.M.A. 1991)); *United States v. Logan,* 22 C.M.A. 349, 351, 47 C.M.R. 1, 3, 1973 WL 14641 (1973). *See also* Art. 45(a), UCMJ, 10 U.S.C. § 845(a).

■ The MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 ed.)[hereinafter MCM], recognizes the existence of the affirmative defense of duress in military law. R.C.M. 916(h) provides:

> **Coercion or duress.** It is a defense to any offense except killing an innocent person that the accused's participation in the offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act. This apprehension must reasonably continue throughout the commission of the act. If the accused has any reasonable opportunity to avoid committing the act without subjecting the accused or another innocent person to the harm threatened, this defense shall not apply.

The MCM recognizes that an accused may commit an illegal act in order to avoid the serious injury or death of the accused or an innocent person. However, the description found in the MCM is not completely dispositive. *United States v. Davis,* 45 M.J. 681, 685 (N.M.Ct.Crim.App.1997). In fact, military courts have limited the duress defense to situations where it is a third party that forces an accused to act illegally. *United States v. Collins,* 37 M.J. 1072, 1073 (N.M.C.M.R.1993); *United States v. Rankins,* 34 M.J. 326, 329 (C.M.A.1992); *United States v. Mitchell,* 34 M.J. 970 (A.C.M.R. 1992). Therefore, the facts in the case before us do not support, but rather negate, the availability of the defense of duress. Since any possible danger to appellant's wife was due to his wife's state of mind rather than the actions of a third person, the defense of duress was clearly not available to the appellant. The record substantiates that a defense of duress was not reasonably raised and, therefore, that the military judge was not required to subject appellant's pleas to further inquiry regarding the issue.

Appellate counsel, at the oral hearing, chose to focus the argument on the defense of necessity. Appellant alleged that his unsworn statement reasonably raised the defense of necessity, thus requiring the military judge to reopen the providence inquiry and make a more searching examination of the circumstances surrounding the missed movement before sustaining the appellant's pleas. The MCM does not recognize the defense of necessity. R.C.M. 916(h) is silent as to whether coercion imposed by a source other than a third person is included in its scope. Typically, when a criminal act is committed in order to avoid a threat of death or serious bodily injury, and the source of the threat is not a third person, military courts have analyzed such criminal acts under the rubric of the duress defense.

In these cases, when an accused has essentially presented a theory of necessity, as in the case before us, the defense of duress has not been successfully raised. *See Collins,* 37 M.J. at 1073 (finding that the accused's statements regarding his fiancee's problems with her pregnancy and the fact that she had no one to stay with her did not support a duress defense); *Mitchell,* 34 M.J. at 973 (finding that the defense of duress was not available where accused had concern for his wife's mental stability and suicidal tendencies). When addressing such situations, military courts have chosen to leave "for another day the question of whether the necessity defense, as separate from the duress defense, is recognized in military criminal law." *Collins,* 37 M.J. at 1074.

At common law, the defense of duress excused the commission of a criminal act where the actor was under an unlawful threat of imminent death or serious bodily injury if he did not commit the illegal act. The defense of duress was available in situations where the source of the threat was a third person. The defense of necessity, on the other hand, traditionally was available in situations where physical forces beyond the actor's control or natural circumstances made the commission of an illegal act the lesser of two evils. Appellant asks this court to interpret R.C.M. 916(h) in such a way as to broaden the recognized defense of duress to include the defense of necessity. We note that the defense of necessity, absent specific statutory authority, has been recognized in numerous state courts and has gained general acceptance in federal law. *Rankins,* 34 M.J. at 328 (citing Milhizer, *Necessity and the Military Justice System: A Proposed Special Defense,* 121 MIL. L. REV. 95, 96 (1988)). In addition, the Model Penal Code allows a broader choice of evils defense that is not limited to any particular source of coercion. ALI Model Penal Code § 3.02 and Commentaries 8–9 (1985).

Appellant asks us to recognize the existence of the affirmative defense of necessity in military law. We decline to do so. In *United States v. Hullum,* the issue before the court was whether the appellant had been deprived of effective assistance of counsel when his appellate defense counsel failed to argue the issue of sentence appropriateness before the United States Navy–Marine Corps Court of Military Review,[5] 15 M.J. 261 (C.M.A.1983). In his appellate brief, counsel failed to argue that the accused's sentence was inappropriately severe in light of the fact that the accused had missed movement because of racial harassment and the receipt of death threats. In its analysis, the court recognized that a charge of unauthorized absence is usually proven when the government shows, through the use of official records and testimony, that the accused failed to report for duty. The court noted, however, that in exceptional cases, such an absence is not conclusive as to guilt. As an example of situations where an absence may be excusable, the court stated that "impossibility may be a defense if unforeseeable circumstances prevented the accused from being present with his unit" and that "in a few cases, necessity and duress have also been recognized as defenses to a charge of unauthorized absence." *Hullum,* 15 M.J. at 265. The court noted that evidence of racial harassment and threats, even if deemed insufficient by the trial judge to excuse the absence, may be considered in mitigation of punishment. The court held, therefore, that it would not have been frivolous for the appellate defense counsel to have argued that the sentence was inappropriately severe. It was in this context that the court discussed the necessity defense. The court, however, did not specifically address whether the commission of an illegal act under circumstances excusing the act at common law, under the theory of necessity, also excuses the commission of the act under military law.

In *United States v. Huet–Vaughn,* the accused was convicted of desertion with intent to avoid hazardous duty and shirk important service after she left her unit as it was about to deploy to the Persian Gulf, 43 M.J. 105 (1995). The issue before the court was whether it was prejudicial error for the military judge to grant a motion *in limine* restricting the accused from introducing her motives and reasons for refusing to support

---

**5.** Now the U.S. Navy–Marine Corps Court of Criminal Appeals.

Operation Desert Shield. The accused stated that, at the time, her intention was to make the public aware of the illegality of the Persian Gulf conflict and the illegality of Presidential authority to order U.S. forces to the region. At trial, the accused wanted to introduce this evidence to show that she had lacked the specific intent to avoid hazardous duty or shirk important service. In addition, she requested that the court-martial members be given an instruction that "it is a defense in this case that the accused did not intend to avoid hazardous duty or shirk important service and instead had a different intent." *Huet–Vaughn*, 43 M.J. at 112. The military judge declined to give the instruction.

In its analysis, the court in *Huet–Vaughn* acknowledged that there are circumstances where evidence of motive is relevant circumstantial evidence of intent. In its opinion, the court proceeded to give a litany of examples under which the accused's proffered evidence of motive would be irrelevant. The examples involved situations where the accused quit her unit: as a gesture of protest; because of moral or ethical reservations; as a refusal to obey an unlawful order; and with the intention to contest the decision to employ military forces in the Persian Gulf. The court then discussed the situation where the accused quit her unit to avoid a greater evil. The court stated that, in such a situation, the accused's motive was again irrelevant because it would not support a defense of necessity. The court reasoned that when the defenses of justification or necessity are asserted, the evidence must tend to show that the accused had no alternative but to break the law. Furthermore, such a defense is not available where the accused's intent was to cause a change in government policy. The court addressed the defense of necessity only in the context of whether or not motive is always relevant evidence of intent.

In *United States v. Rankins*, the U.S. Court of Military Appeals [6] reviewed a court-martial where the accused had missed her ship's movement under circumstances similar to those in the case before us. The sailor missed her ship's movement fearing that her husband, who suffered from a heart condition, would have a heart attack while at home without anyone there to assist him. The issue addressed by the court was "whether the duress defense—or more accurately, the necessity defense—was reasonably raised by the evidence at trial." *Rankins*, 34 M.J. at 328. In its analysis, the court acknowledged the five elements generally considered necessary to establish the defense of necessity. The elements are:

1) the harm must be committed under the pressure of physical or natural force, rather than human force; 2) the harm sought to be avoided is greater than (or at least equal to) that harm sought to be prevented by the law defining the offense charged; 3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm; 4) the actor must be without fault in bringing about the situation; and 5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm.

*Rankins*, 34 M.J. at 328.

Although acknowledging the elements of the defense of necessity, the court found that the defendant would not have been entitled to an instruction on the defense nor on the defense of duress. The court reasoned that the accused's apprehension that her husband might suffer a heart attack at some unspecified time in the future met neither the reasonableness nor immediacy requirements of either defense. Additionally, there was no evidence that the accused had no other reasonable alternative than to miss the movement of her ship, or that she tried to avoid committing the offenses. For these reasons, the court did not feel the need to resolve the issue of whether R.C.M. 916(h) was written so broadly as to include the defense of necessity. However, in a footnote, Judge Crawford, who wrote the lead opinion, commented that "in light of the difficulties to be encountered in applying the necessity defense, particularly in the absence of any legislative or executive guidance, I would decline to adopt

6. Now the U.S. Court of Appeals for the Armed Forces.

the necessity defense by judicial fiat." [7] *Rankins*, 34 M.J. at 330. The court was aware that recognition of the defense of necessity would entail, in each case, a subjective balancing of harms (evils), thereby, making the defense difficult to legislate.

Our colleagues on the U.S. Army Court of Criminal Appeals have, on the other hand, held that duress and necessity are separate affirmative defenses, and that the defense of necessity is not recognized in military law. *United States v. Sanchez*, 40 M.J. 508 (A.C.M.R.1994), *petition denied*, 41 M.J. 374 (C.M.A.1994); *United States v. Banks*, 37 M.J. 700 (A.C.M.R.1993). The court reasoned that "the benefit of rejecting the necessity defense goes to the core of discipline within a military organization. In no other segment of our society is it more important to have a single enforceable set of standards." *Banks*, 37 M.J. at 702. We agree.

■ Since the affirmative defense of necessity has gained general acceptance in many state and Federal courts and has been recognized in the Model Penal Code, appellant argues that the defense should also be available in military jurisprudence. However, the ramifications of an individual choosing to commit an illegal act, in order to avoid what they perceive to be a greater harm, are drastically different in the military than they are in civilian life. In civilian life, innocent individuals may be adversely affected by the commission of the illegal act. In the military, however, the consequences may be much greater. Such a decision affects an individual's shipmates, the safety and efficiency of the ship, as well as the effectiveness of the mission. Ultimately, the consequences may extend to the severity of the action.

■ Finally, rejecting the availability of the necessity defense does not leave the Sailor who has been forced to choose the lesser of two evils without a remedy. Prior to trial, a commander has discretion to dispose of offenses by members of that command. R.C.M. 306(a). Also, mitigating or extenuating circumstances may be taken into consideration when determining a disposition that is appropriate and fair. R.C.M. 306(b). After trial, the convening authority may, as a matter of command prerogative, modify the findings and sentence of a court-martial. Art. 60(c)(1), UCMJ, 10 U.S.C. § 860(c)(1).

We hold, therefore, that the affirmative defense of necessity is not recognized in military law. We find that the military judge had no duty to reopen the providence inquiry or set aside the pleas of guilty after the appellant, during the sentencing stage of the trial, explained that it was fear for his wife's life which caused him to enter and remain in a status of unauthorized absence. We do not view such a statement as providing a substantial basis in law or fact for overturning the guilty pleas and findings. Appellant's comments in his unsworn statement presented matters in extenuation, not a defense to his illegal act. *See Banks*, 37 M.J. at 702.

On the record before us, we find that the appellant's guilty pleas were provident, and that the military judge properly accepted them. Therefore, the first assignment of error is without merit.

### Sentence Inappropriately Severe

■ We believe that the sentence adjudged in this case, 75 days confinement and a bad conduct discharge, is entirely appropriate for this sailor who pled guilty to an unauthorized absence and missing movement by design. The USS FAHRION was on deployment for more than 5 months, leaving Florida on June 27th and returning on or about December 5th. Lieutenant Defrias, the assistant navigator and combat information center officer, testified at trial that the USS FAHRION "pulled into approximately 16 foreign ports which the ship had never been into before; some very challenging sea and anchor details including the transit of the Panama Canal and the Straights of Magellan." Record at 29. Petty Officer Olinger

---

7. We note that the judges of the U.S. Court of Military Appeals were not unanimous in this decision. Judge Cox concurred with the majority opinion written by Judge Crawford. Judge Gierke concurred in the result, while reserving judgment on "whether the necessity defense, separate from the duress defense, is recognized in military law." *Rankins*, 34 M.J. at 331. Chief Judge Sullivan dissented, stating that the defense of necessity was not new to military law. Judge Wiss also dissented, finding that the defense of duress is not limited only to situations where the threat is posed by a third person. *Rankins*, 34 M.J. at 336.

was one of two men qualified to be navigation detail plotter. As quartermaster of the watch, he worked directly for the officer of the deck and was the primary man responsible for the safe navigation of the ship. When the USS FAHRION left for deployment she had only two quartermasters, only one of whom was qualified to stand the same watch as Petty Officer Olinger. Due to the shortage, a junior quartermaster had to be pulled from another ship in the squadron.

With this in mind, we have given individualized consideration to the nature and seriousness of the offenses and the character of the appellant. We conclude that under the circumstances of this case, the sentence approved below was not inappropriately severe. *See United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982)(citing *United States v. Mamaluy,* 10 C.M.A. 102, 106–07, 27 C.M.R. 176, 180–81, 1959 WL 3587 (1959)).[8]

Therefore the second assignment of error is without merit.

### Missing Movement—Multiplicious

█ We have also carefully considered the appellant's contention that the two offenses to which he pled guilty were multiplicious. We disagree. There is authority that an unauthorized absence is a lesser included offense of missing movement. *See* MCM, Part IV, ¶ 11d(1)(b); *United States v. Baba,* 21 M.J. 76 (C.M.A.1985); *United States v. Kovach,* 18 M.J. 23, 23 (C.M.A.1984)(summary disposition); *United States v. Posnick,* 8 U.S.C.M.A. 201, 24 C.M.R. 11, 1957 WL 4687 (1957). These courts reasoned that an unauthorized absence, of some minimal duration, is implicit in virtually all missing movements.

However, the instant case involved an "aggravating circumstance" of unauthorized absence, MCM, Part IV, ¶ 10(c)(4)(b). Unlike the accused in *Baba,* the length of appellant's unauthorized absence was not so short a time as to be inherent in the offense of missing movement. "While an absence of some minimal duration is fairly embraced in an allegation of missing movement, one of extended length is not." *United States v. DiBello,* 17 M.J. 77 (C.M.A.1983). Although the appellant commenced his period of unauthorized

absence on the same evening that his unit began a UNITAS deployment, he remained in an unauthorized absence status for several months. Therefore, this absence was not merely incidental to the greater offense of missing movement through design. In this circumstance, findings of guilt as to both missing movement and unauthorized absence are not multiplicious. *United States v. Murray,* 17 M.J. 81 (C.M.A.1983). In addition, in such a situation, we believe the Congress intended to punish an unauthorized absence and missing movement as wholly separate offenses. *United States v. Teters,* 37 M.J. 370, 376–77 (C.M.A.1993), *cert. denied,* 510 U.S. 1091, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994).

### Conclusion

Upon consideration of the record of trial, the summary assignments of error, the supplemental summary assignment of error, and the Government's responses thereto, we have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and the sentence, as approved on review below, are affirmed.

Chief Judge DOMBROSKI and Senior Judge LUCAS concur.

---

8. Appellant, in his unsworn statement, requested a bad-conduct discharge because he felt that it

was in his best interest to leave the naval service. Record at 34.