UNITED STATES, Appellee,

v.

Lester E. OLINGER IV, Quartermaster
Second Class, U.S. Navy, Appellant.

No. 98–0095.
Crim.App. No. 96–1319.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 17, 1998.

Decided May 26, 1999.

Sullivan, J., filed opinion concurring in
the result.

EFFRON, J., delivered the opinion of the
Court, in which COX, C.J., and CRAWFORD
and GIERKE, JJ., joined. SULLIVAN, J.,
filed an opinion concurring in the result.

For Appellant: *Lieutenant Commander
R.C. Klant*, JAGC, USN (argued).

For Appellee: *Lieutenant Janice K.
O'Grady*, JAGC, USNR (argued); *Commander D.H. Myers*, JAGC, USN (on brief);
*Colonel Charles Wm. Dorman*, USMC.

Judge EFFRON delivered the opinion of
the Court.

A special court-martial composed of a military judge sitting alone convicted appellant, pursuant to his pleas, of unauthorized absence (UA) and missing a military movement, in violation of Articles 86 and 87, Uniform Code of Military Justice, 10 USC §§ 886 and 887, respectively. Appellant was sentenced to a bad-conduct discharge, confinement for 80 days, forfeiture of $500.00 pay per month for 2 months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged, but suspended all confinement in excess of 75 days for 6 months from the date of trial. The Court of Criminal Appeals affirmed. 47 MJ 545 (1997).

On appellant's petition, we granted review
of the following issue:

WHETHER THE LOWER COURT
ERRED IN FAILING TO RECOGNIZE
"NECESSITY" AS AN AVAILABLE DEFENSE IN MILITARY PRACTICE.

For the reasons stated below, we will affirm
the decision of the Court of Criminal Appeals.

## I

Appellant was assigned to the USS FAH-RION, which was scheduled to deploy for more than 5 months, beginning on June 27, 1995. On that date, appellant failed to return from authorized leave and report to his ship, located at Mayport, Florida. He remained absent until on or about December 5, 1995, when he turned himself in to authorities at Great Lakes Naval Station.

At trial, appellant pleaded guilty. His responses to the providence inquiry provided a factual basis for all the elements of the charged offenses. However, in an unsworn statement during sentencing, appellant noted that in March 1995, he and his wife found out that she could not have children. She suffered from depression and took Prozac, an antidepressant drug. He added that she previously had an operation that made "stress a danger to her health." He also stated: "And at the time I went UA I felt that her depression might kill her from the stress if I went on the UNITAS deployment."

On appeal, appellant argues that the defense of necessity should be applied either as a matter of common law or as a military adaptation of the common-law defense. He claims that this statement reasonably raised the possibility of a necessity defense, which established a substantial conflict with his pleas and rendered them improvident.

## II

The common-law defense of necessity, which heretofore has not been recognized in military law, generally "is available to one who intentionally causes a harm or evil contemplated by an offense, provided that the justifying circumstances result in a lesser net harm or evil as intended by the actor." Milhizer, *Necessity and the Military Justice System: A Proposed Special Defense*, 121 Mil.L.Rev. 95 (1988) (footnote omitted). As noted by the court below, the common-law defense of necessity "has been recognized in numerous state courts and has gained general acceptance in federal law." 47 MJ at 549.

1. This version was in effect at the time of trial.

In military law, a somewhat narrower defense is provided, under the concept of duress, in RCM 916(h), Manual for Courts-Martial, United States (1998 ed.):[1]

It is a defense to any offense except killing an innocent person that the accused's participation in the offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act. The apprehension must reasonably continue throughout the commission of the act. If the accused has any reasonable opportunity to avoid committing the act without subjecting the accused or another innocent person to the harm threatened, this defense shall not apply.

The issue, as framed by appellant, raises a question we left open in *United States v. Rankins,* 34 MJ 326 (1992): Should the duress defense under RCM 916(h) be limited to cases in which the source of the threat is a third person, or should it also include cases in which the source of the threat involves another physical or natural source? The issue also raises the question whether RCM 916 reflects the appropriate parameters of this type of defense, or whether we should also permit the broader common-law defense of necessity.

As noted by the court below, these questions address some of the most fundamental principles in the military justice system:

[T]he ramifications of an individual choosing to commit an illegal act, in order to avoid what they perceive to be a greater harm, are drastically different in the military than they are in civilian life. In civilian life, innocent individuals may be adversely affected by the commission of the illegal act. In the military, however, the consequences may be much greater. Such a decision affects an individual's shipmates, the safety and efficiency of the ship, as well as the effectiveness of the mission. Ultimately, the consequences may extend to the severity of the action.

47 MJ at 551; *accord United States v. Banks,* 37 MJ 700, 702 (ACMR 1993) ("[R]ejecting the necessity defense goes to the core of discipline within a military organization. In no other segment of our society is it more important to have a single enforceable set of standards.").

## III

In an appeal involving a plea of guilty, before we consider whether the existing law of defenses should be interpreted or extended to embrace new principles, the threshold question is whether the accused, after entering the plea, has set forth "matter inconsistent with the plea," such as a potential defense. *See* Art. 45(a), UCMJ, 10 USC § 845(a); RCM 910(e), Discussion and (h)(2).[2]

 In the present case, appellant's unsworn statement during the sentencing proceeding contained a brief speculative comment that at the time he absented himself, he felt that his wife's "depression might kill her from the stress if [he] went on the UNITAS deployment." Appellant did not provide any further details indicating an immediate threat of death or serious bodily harm or that there were no alternative sources of assistance for his wife other than his unauthorized absence and missing movement; nor did appellant provide other facts that would establish either the defense of duress under RCM 916(h) or the common-law defense of necessity. *See Rankins,* 34 MJ at 328–29. Even if we were to hold that the defense of duress could be established through a threat emanating from physical or natural sources, or that the broader common-law defense of necessity should be applicable to courts-martial, appellant's remarks would be insufficient to render his plea improvident. As we noted in *United States v. Faircloth,* 45 MJ 172, 174 (1996):

> We will not overturn a military judge's acceptance of a guilty plea based on a "mere possibility" of a defense. The record must "show a 'substantial basis' in law and fact for" rejecting the plea of guilty. *United States v. Prater,* 32 MJ 433, 436

(CMA 1991). We also will not "speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas." *United States v. Johnson,* 42 MJ 443, 445 (1995).

While the issues raised by appellant are important, we conclude that it would be inappropriate to resolve these questions on the basis of the record before us. These matters could have been raised at trial had appellant contested his guilt on the grounds of necessity. Alternatively, these matters could have been raised through testimony during the providence inquiry or at sentencing, had such testimony included facts providing a substantial basis for addressing the applicability of the necessity defense in the military justice system. Appellant's vague speculation as to what might have happened had he remained with his shipmates provides an insufficient basis for considering whether the law should be interpreted or extended as he has urged.

## IV

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in the result):

In my view, this Court should expressly hold that the court below erred in concluding that military law does not recognize a defense of necessity. *See United States v. Rankins,* 34 MJ 326, 331 (CMA 1992) (Sullivan, C.J., dissenting); RCM 916(h), Manual for Courts–Martial, United States (1995 ed.). Nevertheless, I vote to affirm the result in this case because the "mere possibility" that the necessity defense was available is not a sufficient basis upon which to upset appellant's guilty plea. *See generally United States v. Faircloth,* 45 MJ 172, 174 (1996).

The majority opinion in this case correctly acknowledges that the granted issue raises a question left unresolved by a majority of this Court in *Rankins.* There, we considered whether the military judge erred by refusing

---

2. *See* n. 1, *supra.*

to provide a duress instruction in a missing-movement case where there was testimony that the accused had missed movement out of fear that her sick husband would have suffered a heart attack at home in her absence without anyone to assist him. The granted issue in the case at bar thus implicitly raises the necessity defense because it calls into question whether the source of the threat of harm should apply only to third persons or to other physical or natural sources. *See generally United States v. Bailey*, 444 U.S. 394, 409–10, 100 S.Ct. 624, 634–35, 62 L.Ed.2d 575 (1980) (noting nuances between duress and necessity). In *Rankins*, two judges agreed that military jurisprudence does not recognize the necessity defense, 34 MJ at 330 n. 2; one judge reserved judgment on the question, *id.* at 330; and the two dissenting judges opined that the necessity defense is a part of military criminal law, *id.* at 332, 339–40.

In light of the fractured result in *Rankins*, it should be no surprise that this issue has resurfaced here today. Indeed, as the majority opinion aptly suggests, the question presented in this case "address[es] some of the most fundamental principles in the military justice system...." 50 MJ at 366. The majority opinion, however, declines to resolve the granted issue, reasoning that the "threshold question" in a guilty-plea case "is whether the accused, after entering the plea, has set forth 'matter inconsistent with the plea,' such as a potential defense. *See* Art. 45(a), UCMJ, 10 USC § 845(a)." 50 MJ at 367. In my view, this "threshold question" cannot be logically answered in this case unless this Court first decides whether the specific "potential defense" is recognized as a matter of military law. Accordingly, I would specifically answer the issue concerning the viability of the necessity defense.

In this regard, I note RCM 916. It provides, *inter alia:*

(h) *Coercion or duress.* It is a defense to any offense except killing an innocent person that the accused's participation in the

offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act. The apprehension must reasonably continue throughout the commission of the act. If the accused has any reasonable opportunity to avoid committing the act without subjecting the accused or another innocent person to the harm threatened, this defense shall not apply.

On its face, this rule does not limit the defense to instances where the source of the threat is a third person as opposed to other natural or physical occurrences. *See Rankins*, 34 MJ at 339 (Wiss, J., dissenting). Furthermore, the Analysis of RCM 916(h) provides that "the fear of injury to relatives or others may be a basis for this defense." Manual, *supra* at A21–62. Thus, RCM 916(h) permits a defense of necessity even though the rule is under the rubric of "duress." [1] As I stated in *Rankins*, the necessity defense is not a novel concept in either military or federal law. 34 MJ at 332 (dissenting) (citing *United States v. Jemmings*, 1 MJ 414, 417 (CMA 1976); *United States v. Pinkston*, 18 USCMA 261, 262, 39 CMR 261, 262 (1969)). I adhere to that view today.

Admittedly, the amount of evidence needed to trigger the necessity defense may vary depending on the context in which it is raised. For example, in *Rankins*, I opined that the defense was sufficiently raised by the evidence to require the military judge to provide a requested instruction to the members. *See also Rankins*, 34 MJ at 340 (Wiss, J., dissenting) (finding duress defense "reasonably raised" to require instruction to the panel members). Similarly, if in the present case appellant had made this statement while testifying on the merits in a contested case with members and his defense counsel requested an instruction to the jury, the defense might have been reasonably raised to

---

1. The Supreme Court has opined that fine line distinctions drawn between "duress" and "necessity" should not blur the one principle underlying each: "if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail." *Bailey*, 444 U.S. at 410, 100 S.Ct. at 634.

warrant an instruction. *See United States v. Williams,* 21 MJ 360, 362 (CMA 1986).

In the present case, the record shows a mere glimpse of the necessity defense in one sentence of appellant's unsworn statement made during the extenuation-and-mitigation phase.[2] Appellant stated, "And at the time I went UA I felt that her depression might kill her from the stress if I went on the UNITAS deployment." This speculative comment did not require the military judge to re-open the providence inquiry. *See generally United States v. Prater,* 32 MJ 433, 436 (CMA 1991) ("mere possibility" of a defense insufficient to overturn guilty plea).

Accordingly, I join the majority in affirming the result reached below in this case.

---

**2.** *I do not intend to imply that a military judge can never reopen a providence inquiry if a potential defense is raised during the sentencing phase of a case. Indeed, if a defense is raised in a statement by the accused subsequent to entering a plea of guilty, our case law makes clear that the* military judge must resolve factual inconsistencies and any apparent defenses raised by the statement. *See United States v. Stewart,* 29 MJ 92, 93 (CMA 1989); *United States v. Jemmings,* 1 MJ 414, 418 (CMA 1976); *see also* RCM 910(h)(2).